[Crim. No. 470.   Third Appellate District.—August 11, 1919.]

## THE PEOPLE, Respondent, v. ALEXANDER NEETENS, Appellant.

[1] CRIMINAL LAW — OBTAINING MONEY UNDER FALSE PRETENSES — PLEADING AND PROOF—NECESSARY ELEMENTS.—In a prosecution for the crime of obtaining money under false pretenses, the fraudulent representations must clearly appear; it must be shown that they

---

1. Reliance on false pretenses as an element of the offense, note, 6 L. R. A. (N. S.) 365.

were known by the defendant to be false or were made under circumstances not warranted by the knowledge of the defendant; that they were made with intent to deceive the innocent party; that the person injured relied upon the representation and that otherwise he would not have parted with his money.

[2] ID.—CONFORMITY OF PROOF WITH PLEADING.—In such a prosecution the proof should correspond essentially with the allegations of the pleading.

[3] ID.—ORAL FALSE REPRESENTATIONS—INSUFFICIENT CORROBORATION. In this prosecution for the crime of obtaining money under false pretenses, the so-called false representation having been entirely oral, there was no corroborative evidence as required by section 1110 of the Penal Code.

[4] ID.—DRUNKENNESS AS DEFENSE—IMPROPER INSTRUCTION.—In such a prosecution, there being no degrees of the crime, it is erroneous to instruct the jury that "It is a well-settled rule that drunkenness is no excuse for the commission of a crime. Drunkenness forms no defense whatever to the fact of guilt, for when a crime is committed by a party while in a fit of intoxication the law will not allow him to avail himself of his own gross vice and misconduct to shelter himself from the legal consequences of such crime. Evidence of drunkenness can only be considered by the jury for the purpose of determining the degree of the crime."

[5] ID.—GIVING OF CORRECT INSTRUCTION—ERROR NOT CURED.—Where such an instruction, which is plainly erroneous, is given, such error is not cured by the giving in some other part of the charge of a correct instruction, based on section 22 of the Penal Code, with reference to drunkenness as an excuse for crime.

[6] ID.—EVIDENCE OF USE OF LIQUOR—PROPER INSTRUCTION MATERIAL. Where there is evidence that the defendant at the time of the commission of the alleged offense was under the influence of liquor, it is important that the jury be correctly instructed with reference to the materiality of that fact.

APPEAL from a judgment of the Superior Court of San Joaquin County, from an order denying a new trial, and from an order in arrest of judgment. J. A. Plummer, Judge. Reversed.

The facts are stated in the opinion of the court.

Frank A. Henning for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—Appellant was convicted of obtaining money under false pretenses and he appeals from the judgment, the order denying a motion for a new trial, and the order denying a motion in arrest of judgment.

The information upon which he was convicted charged the offense as follows: "The said Alexander Neetens did on or about the 24th day of November, A. D. 1918, . . . devise and intend by unlawful ways and means and by false and fraudulent representations and pretenses to obtain and get into his possession the personal property of one Jakob Hieb, in the manner following, to wit: That the said Alexander Neetens did, at and in the county aforesaid, and on or about the date aforesaid, willfully, unlawfully, knowingly, designedly, falsely and fraudulently pretend and represent to said Jakob Hieb that he, the said Alexander Neetens, had met one Dan Seyer in the city of Stockton; . . . and had made arrangements with the said Dan Seyer to pay a mortgage which the said Dan Seyer held on the property of one Christina Wagenmann on De Force Avenue in the City of Lodi, County of San Joaquin; . . . and that he desired to obtain from the said Jakob Hieb the sum of one hundred dollars until 10 o'clock a. m. on November 25, 1918, at which time the said $100 would be paid to the said Jakob Hieb." Then follows an averment of the falsity of the statement as to said meeting and agreement with Seyer. The information proceeds: "And the said Jakob Hieb believing said false and fraudulent pretenses and representations so made as aforesaid to be true and being deceived thereby, was induced by reason of the said false and fraudulent pretenses and representations so made as aforesaid to deliver and pay over to the said Alexander Neetens the sum of $100, . . . and the said defendant then and there by means of said false and fraudulent pretenses and representations so made as aforesaid, did then and there willfully, unlawfully, knowingly, designedly and fraudulently receive and obtain from the said Jakob Hieb the said sum of $100 . . . with the intent to cheat and defraud the said Jakob Hieb of the same, and the said defendant did then and there willfully, unlawfully, and fraudulently take and carry away the same."

It is quite apparent that said information is defective, the most serious fault being the absence of any fact showing or indicating any causal connection between the false repre-

sentation and the loan or transfer of the one hundred dollars from Hieb to defendant. From no allegation does it appear that Hieb was interested in said mortgage or its release, and why he should advance money for said payment is left entirely to conjecture. Under the decision of *People* v. *Canfield*, 28 Cal. App. 792, [154 Pac. 33], the information herein would be held fatally defective, but the supreme court in *People* v. *Griesheimer*, 176 Cal. 44, [167 Pac. 521], has taken a different view of this requirement of the rules of pleading, and, it may be, that the doctrine of that decision is sufficiently flexible and potential to save the information herein.

The case, however, should be reversed, we think, by reason of the insufficiency of the evidence to support the conviction. [1] The elements to be alleged and proven in a charge like this are well known. The fraudulent representations must clearly appear. It must be shown that they were known by the defendant to be false or were made under circumstances not warranted by the knowledge of the defendant; that they were made with intent to deceive the innocent party; that the person injured relied upon the representation and that otherwise he would not have parted with his money. (*People* v. *Jordan*, 66 Cal. 10, [56 Am. Rep. 73, 4 Pac. 773].)

As to these elements it is well to observe that the only representation as to an existing fact, upon which the charge can possibly be sustained, is that the defendant had met one Dan Seyer and had made arrangements with him "to pay a mortgage which the said Dan Seyer held on the property of one Christina Wagenmann." It is also apparent that the only important feature of this alleged representation consists of the allegation as to said "arrangements." The circumstance of meeting Dan Seyer is surplusage, or, at least, mere matter of inducement. The vital consideration is that he had made arrangements or had agreed with Seyer to pay a certain mortgage. When we turn to the testimony of Hieb we find that he first related the conversation with defendant without mentioning this representation at all, and the only thing stated by him tending in any manner to support that allegation of the information is found in his answer to this suggestive question: "What, if anything, was said about any conversation with Dan Seyer?" His answer was: "Yes, he said that during the week he had been in talking to Seyer

and he had released the house." That "he had released the house" is materially different from the allegation that he "had made arrangements *to release*" it. The variance seems substantial. [2] Of course, the proof should correspond essentially with the allegation of the pleading. Moreover, if we concede that there is a sufficient correspondence in this respect between the testimony and the information, then there is a failure of proof because there is no corroboration. Section 1110 of the Penal Code provides: "Upon a trial for having, with an intent to cheat or defraud another designedly, by any false pretense, obtained the signature of another person to a written instrument, or having obtained from any person any labor, money, or property, whether real or personal, or valuable thing, the defendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing, unless the pretense, or some note or memorandum thereof is in writing, subscribed by or in the handwriting of the defendant, or unless the pretense is proven by the testimony of two witnesses, or that of one witness and corroborating circumstances."

[3] It is admitted that the so-called false representation was entirely oral. It is true that another witness testified to said conversation between the defendant and Hieb, namely, the wife of the prosecuting witness. She related the conversation as follows: "When Mr. Neetens came over there he asked if he had a little money; Mr. Hieb says: 'Yes, I have got a little but I need it for paying my taxes.' He said: 'I only want it until to-morrow to pay off the mortgage on Mrs. Wagenmann's house, pay the money to Mr. Seyer, and then I will pay the money back Monday morning at 10 o'clock.' " She was present during the entire interview, and in her testimony is not a word about any representation as to a conversation or arrangement between defendant and Seyer as to said mortgage. It is true that she was not asked the direct question as to whether any such representation was made by defendant, but it is a fair inference from her testimony that no such representation was made. At any rate she failed in this respect to furnish any corroborative evidence, and we find no circumstance in the case supplying the omission.

[4] Again, in his charge, the learned trial judge instructed the jury as follows: "It is a well-settled rule that

drunkenness is no excuse for the commission of a crime. Drunkenness forms no defense whatever to the fact of guilt, for when a crime is committed by a party while in a fit of intoxication, the law will not allow him to avail himself of his own gross vice and misconduct to shelter himself from the legal consequences of such crime. Evidence of drunkenness can only be considered by the jury for the purpose of determining the degree of the crime.'' Such an instruction is erroneous in this class of cases. The authority for the instruction cited by the lower court, namely, *People* v. *Vincent*, 95 Cal. 428, [30 Pac. 581], and *People* v. *Methever*, 132 Cal. 326, [64 Pac. 481], each involved a charge of murder, which offense is divided into degrees. The offense of obtaining money by false pretenses is capable of no such division, and the principle to be applied is enunciated in *People* v. *Phelan*, 93 Cal. 111, [28 Pac. 855]. Therein it is said: ''The intent with which a building is entered being a necessary element to constitute the crime of burglary, it is proper for the jury to take into consideration the fact that the accused was intoxicated at the time, in determining the intent with which he committed the act, and an instruction to the jury that they could not consider such evidence for any other purpose than that of determining the degree of the crime is prejudicially erroneous, there being no question as to the degree of the crime, the evidence showing without conflict that the building was entered in the night-time.'' In this case, as we have stated, there is no degree of the crime and the instruction was, therefore, equivalent to saying that the jury could not consider the evidence of drunkenness for any purpose. Whereas, the truth is that ''the purpose, motive, and intent of the defendant'' were and are involved in the charge and the correct rule is prescribed in section 22 of the Penal Code as follows: ''No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act.''

[5] This instruction was also given by the court, but it did not correct the error, for the reason that "an instruction plainly erroneous is not cured by a correct instruction in some other part of the charge." (*People* v. *Westlake,* 124 Cal. 457, [57 Pac. 467].)

[6] There is evidence in the record that the defendant at the time of the alleged offense was under the influence of liquor. Whether it contained more than the much discussed two and three-fourths per cent of alcohol we are not advised, but a finding that he was intoxicated would not be unsupported. Therefore, it was important that the jury should be correctly instructed as to this feature.

The case for the people is weak, and we think the interests of justice demand a reversal of the verdict. Accordingly, the judgment and the order denying the motion for a new trial are reversed.

Chipman, P. J., and Hart, J., concurred.