[Cr. A. No. 67. Appellate Department, Superior Court, Los Angeles County.—January 3, 1930.]

THE PEOPLE, Respondent, v. DR. CHARLES A. CALE, Appellant.

[Cr. A. No. 59. Appellate Department, Superior Court, Los Angeles County.—January 3, 1930.]

THE PEOPLE, Respondent, v. FREDERICK W. LYTTLE et al., Appellants.

[1 Cal. Supp. 9.]

Griffith Jones, S. S. Hahn and James E. Bates, for Appellants.

Lloyd S. Nix, City Prosecutor, and F. W. Fellows and Joe W. Matherly, Deputies City Prosecutor, for Respondent.

BISHOP, J.—The two cases above entitled are considered together because they present problems depending upon the same legal principles for solution. In each the defendants

were charged with petty theft. In each the offense within the category of "theft" which the evidence most nearly indicates is that of obtaining money under false pretenses. In each the evidence fails utterly to establish such an offense.

The crime of obtaining money by false pretenses is not new to this state, and the indispensable elements were early catalogued and have been frequently illustrated.

. In the Penal Code we find two sections of interest. Section 532, as enacted in 1872, read in part:

"Every person who knowingly and designedly, by false or fraudulent representations or pretenses, defrauds any other person of money or property . . . is punishable by imprisonment in the county jail."

In 1889 the section was amended so as to make the punishment the same as that for larceny of money or property so obtained, and in 1905 the section was further amended in a particular not of interest to us.

Section 484, as amended in 1927, includes this offense under the definition of theft, by the following language:

"Every person who shall . . . knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, . . . is guilty of theft."

In the early cases of *People* v. *Jordan,* (1884) 66 Cal. 10 [56 Am. Rep. 73, 4 Pac. 773], and *People* v. *Wasservogle,* (1888) 77 Cal. 173 [19 Pac. 270], we find this statement concerning obtaining money under false pretenses:

"It is true, as claimed for appellant, that to constitute the offense charged, four things must concur, and four distinct averments must be proved:

" '1. There must be an intent to defraud;

" '2. There must be actual fraud committed;

" '3. *False pretenses* must be used for the purpose of perpetrating the fraud; and

" '4. The fraud must be accomplished by means of the false pretenses made use of for the purpose; viz., they must be the cause which induced the owner to part with his property.' (*Commonwealth* v. *Drew,* [9 Pick. (Mass.) 179] *supra.*) "

This specification of the constituent parts of the offense was approved in *People* v. *Cadot,* (1903) 138 Cal. 527 [71

Pac. 649], *People* v. *Rose,* (1919) 42 Cal. App. 540 [183 Pac. 874], and *People* v. *Neetens,* (1919) 42 Cal. App. 596 [184 Pac. 27].

Another expression of the rule is found in *People* v. *Ward,* (1905) 145 Cal. 736 [79 Pac. 448]:

"The charge was obtaining money by false pretenses. The elements of the crime necessary to the establishment of the *corpus delicti* are false statements adapted to the fraudulent purpose, and money parted with upon the faith of such statement."

By way of illustrating the second element, we have such cases as *People* v. *Tufts,* (1914) 167 Cal. 266 [139 Pac. 78, 80], where it is said:

"Where the prosecutor gets out of the transaction just what he bargained for no offense is committed."

*People* v. *Bliss,* (1920) 47 Cal. App. 503 [190 Pac. 1046], comes to the same conclusion, relying upon the Tufts case.

Then, too, the pretense must be relied upon, or there is no offense. To this effect, see *People* v. *Daniels,* (1923) 64 Cal. App. 514 [222 Pac. 387], and *People* v. *Wilkins,* (1924) 67 Cal. App. 758 [228 Pac. 367].

A further principle imbedded in the authorities is that the pretense must be as to a past or present fact. It is not an offense if it is a matter of opinion or a statement of a future happening. In *People* v. *Wasservogle, supra,* the following definition is quoted from Bishop:

"A false pretense is such a fraudulent representation of an existing or past fact, by one who knows it not to be true, as is adapted to induce the person to whom it is made to part with something of value."

The following quotation from *People* v. *Walker,* (1926) 76 Cal. App. 192 [244 Pac. 94, 100], correctly states the rule governing in these cases:

"(17) It is well settled that to be indictable the representation must be of a past event or an existing fact. No representation of a future event, whether in the form of a promise or of an opinion, can be a criminal pretense."

To the same effect, see *People* v. *Gibbs,* (1893) 98 Cal. 661 [33 Pac. 630]; *People* v. *Green,* (1913) 22 Cal. App. 45 [133 Pac. 334]; *People* v. *Kahler,* (1915) 26 Cal. App. 449 [147 Pac. 228]; *People* v. *Mace,* (1925) 71 Cal. App. 10

[234 Pac. 841]; *People* v. *Moore*, (1927) 82 Cal. App. 739 [256 Pac. 266]; *People* v. *White*, (1927) 85 Cal. App. 241 [259 Pac. 76].

Applying the measure of these principles to the evidence in the cases before us we find it far short of that required to prove petty theft.

Defendants Lyttle, Snyder and Byrn were charged with unlawfully taking $2.50 from one Lessey A. Frame on or about May 16, 1929. In addition to Frame, the prosecution called some ten witnesses to prove a course of dealing to illustrate or complete that claimed to have been followed on the occasion charged. From examining the testimony of these witnesses, a fair understanding of the theory of the prosecution may be obtained. It is, that the defendants, as directors of the Society of the New School of Applied Christian Psychology, secured many members at $2.50 each on the representation that shortly, thirty to sixty days, each $2.50 member would be able to sell out his membership for $95 net to a new member who was to come in on a reorganization of the school.

 Plainly this is not a representation of a past or present fact and therefore does not constitute an offense. In only two places in the whole record is there any suggestion of a statement as to an existing fact. The prosecuting attorney, during the cross-examination of Mrs. Shreeve by the defendant's counsel, asked her this question: "Would you have paid this $2.50 but for the representation that someone was ready to take over your membership?" To which the reply was: "No, I would have had no reason to go in there." Who made the representation was not shown, nor was it shown not to be true.

In cross-examination Mrs. Middleton stated that Mr. Lyttle told them that he already had the new member, "waiting for our paper." This was not shown to be false.

But if these two representations had been shown to be false, and had been shown to have been made by the defendants, and if a statement that $95 would be realized in a month or so out of an investment of $2.50 could be a false pretense constituting a public offense, still we would have no evidence warranting a verdict against the defendants in this case. This is so because the prosecuting witness testified that none of the defendants ever made any

representation to him prior to his paying his $2.50 except that Mr. Lyttle said that the $2.50 was for three months' dues and application, a representation admittedly true and not material. A man, name not inquired for, who worked at the same place the prosecuting witness did, had told him what he was to get for his $2.50, and his first approach to defendant Lyttle was, "I have come to pay my dues."

This evidence lacks every one of the elements held necessary to prove the offense of obtaining money under false pretenses. The judgment against defendants Lyttle, Snyder and Byrn must be reversed and the cause remanded for a new trial.

In the first complaint issued against Dr. Cale, he is charged with having unlawfully taken $14 of Jacqueline De Courcy. She, it appears from her testimony, as an investigator for the chief inspector of the State Chiropractic Board, visited the defendant and expressed a desire to purchase a diploma (Doctor of Chiropractic) without attending school, that she might practice in Wyoming. He agreed to get her one for $250 as soon as he secured certain signatures. A few days later, on request, she made a payment on account of $14, promising to pay the balance when the diploma was delivered. She never returned for the diploma nor her $14.

No representation, false or otherwise, is here shown, except merely a promise as to what he would do but was never called on to do. Indeed, we may reasonably infer that the reason the prosecuting witness was sent to him was the belief that he would do what he promised her he would do, i. e., sell her a diploma. The judgment based on the first complaint is reversed, cause remanded for new trial.

In the second complaint against the defendant Cale he is charged with taking two sums of money from Anna Carlson, who had been referred to the defendant by a friend to learn to become a masseuse. His representations appear as follows: 1. After a three months' course she would be able to go out with his diploma and make an independent living. 2. He handed her a diploma after ten or twelve lessons, stating it to be as good as any in town. (She was charged $125 for the diploma, and made payment in two sums, which appear in the two counts of the complaint.)

The first representation was obviously but an expression of opinion as to a future event. Just what is meant by the second statement it is hard to say. It may be an expression of opinion or a statement of fact, depending on the circumstances under which uttered. But in any event, there was no showing that the prosecuting witness paid the money in reliance upon the statement. An offense has not been proven.

It may well be that the lessons were not worth the sum asked or any considerable portion of it, and the diploma was worthless, as the prosecution contended. With that problem we are not here concerned. The question here is, Did the defendant obtain money under false pretenses? He has not been shown to have done so. The judgments in the second action are reversed, the cause remanded for a new trial.

McLucas, P. J., and Shaw, J., concurred.